Morris Darrow LIKINS, Appellant,

v.

Bobbi Likins LOGSDON, Appellee.

No. 89-SC-728-DG.

Supreme Court of Kentucky.

June 28, 1990.

Charles D. Williams, Munfordville, for appellant.

Jon W. Goodman, Munfordville, for appellee.

LEIBSON, Justice.

This is a dispute over the extent to which a divorced father has a right to oppose legal proceedings initiated by his former wife, now remarried, seeking to change the surname of the children born of their marriage to that of their step-father. The children are Jennifer Michelle Likins, born January 31, 1976, and Julie Raquelle Likins, born May 11, 1978. Their parents were divorced in 1981, and their mother then married Wesley Logsdon in 1982 and took up residence with her new husband in Hart County.

The present action now on appeal starts with a Verified Petition for A Change of Names filed by the mother in Hart District Court in September, 1987. But before the present suit was filed there is a long history of hostility between these divorced parents demonstrated by portions of the record from Hart Circuit Court filed with the record in this case, involving disputes over payment of child support, visitation, and unilateral, informal steps taken by the mother to change the children's name.

The present petition filed by the mother seeks to invoke the jurisdiction of Hart District Court to change the name of the children pursuant to KRS 401.020. The change of names petition states that "for the past five years these infants have been using the last name of their step-father, Wesley Logsdon, ... but by proper orders of the Hart Circuit Court, the children were directed to use the name of Likins on all official records," that the existing situation causes "confusion and embarrassment to the infants, Jennifer and Julie, and that it would be in [their] best interest ... for the court to enter an Order officially and legally changing their names."

KRS 401.020 extends to a child's parent the right to "have the name of a child under the age of eighteen (18) changed by the district court." It provides in pertinent part:

"However, if one (1) parent refuses or is unavailable to execute the petition, proper notice of filing the petition shall be served in accordance with the Rules of Civil Procedure."

The questions are (1) to what extent did the father, who was entitled to "notice"

under this statute, have a right to contest the change of names, and (2) what are the standards to be applied in deciding this issue when it is contested?

The father, Morris Likins, was obviously deeply interested in having his children continue to bear his name, even though his status has been changed to that of only a visiting parent. This issue had been the subject of litigation in the Circuit Court proceedings, culminating in an order entered February 8, 1985, enjoining the mother to "forthwith change the subject children's official school enrollment documents to reflect their true last name as Likins." The Circuit Court opinion rendered at that time referred to the children's wish to use the name "Logsdon" and then stated, "once the children acquire the desired feeling toward Morris, this temporary phenomenon will no doubt disappear." The "phenomenon" did not disappear. Rather than ceasing to stir the winds of discontent, the mother simply shifted direction, blowing into a new forum.

The father filed an Answer to the District Court Petition, alleging *inter alia* "that this action is merely a method of circumventing the clear Orders of the Hart Circuit Court." After extensive briefing and an evidentiary hearing, the District Court ordered the children's surnames changed to Logsdon. The record of any conduct on the part of the father that would justify depriving him of having his children bear his surname is either insignificant or nonexistent, depending on one's point of view. The primary reason, if not the exclusive reason for the change of name, apparent from the District Court findings, is that the children "are adamant in their demand to be known as Logsdon." The only conduct in the record to explain their hostility was an altercation at a Bowling Green shopping center in early 1984 between the children's paternal grandmother and their mother, witnessed by the children, wherein the grandmother physically attacked Bobbi after she refused to permit the grandmother time to buy Christmas presents. The details of this incident, which did not involve Morris Likins in any way, were before the Circuit Court at the

time when it mandated the use of the name "Likins" in the school records. In sum, there was no evidence against Morris Likins that would justify depriving him of having his children bear his name unless the children's desire, borne of their mother's hostility, is sufficient.

KRS Chapter 401, Change of Name, has two sections. The first, KRS 401.010, permits "[a]ny person at least eighteen of years of age" to "have his name changed by the District Court," without restrictions. The second section, KRS 401.020, as previously noted, covers change of name for a child and expresses no specific restriction other than "proper notice of the filing of the petition" must be served on a parent who "refuses or is unavailable to execute the petition." Nevertheless, it was the view in both District Court, and on appeal to Circuit Court, that the name of a child should not be changed by the District Court unless to do so is in the child's "best interest." District Court decided that it was in the best interest of the children to permit them to change their name because "they are adamant in their demand to be known as Logsdons," and "[t]o continue to mandate that their official records use the name Likins serves only to cause confusion and turmoil." Circuit Court reversed, "agree[ing] with the lower Court that the best interests of the children should be the ultimate test" but "believ[ing] that before a moving party can succeed under the 'best interests' test, it is incumbent upon such party to prove through 'clear and convincing' proof that the name change will promote the best interests of a child or children." The Circuit Court Opinion states:

"Such higher burden of proof is believed necessary in order to balance a natural father's protectable right to have his children bear his name, *Burke v. Hammonds*, Ky.App., 586 S.W.2d 307 (1979), against what is best for the child or children."

Circuit Court concluded the proof was far short of clear and convincing. In a split decision, the Court of Appeals reversed "with directions that the district court's order be reinstated." We have ac-

cepted discretionary review, and we now reverse. We agree with the Circuit Court that the evidence here is insufficient to justify a change of names, but we will articulate the reasons in a somewhat different fashion.

All three courts below have cited to *Burke v. Hammonds*, Ky.App., 586 S.W.2d 307 (1979) and *Blasi v. Blasi*, Ky., 648 S.W.2d 80 (1983) in seeking the appropriate structure for deciding these cases.

*Burke* recognizes the right of a father, in post-divorce proceedings, after an evidentiary hearing, to obtain an order permanently enjoining the mother from changing the names of their children. It finds this authority in KRS 403.110, stating:

> "Our marriage dissolution statute mandates that it 'shall be liberally construed and applied to promote its underlying purposes.' [footnote omitted] Two of these are the safeguarding of family relationships and the mitigating of potential harm to spouses and their children caused by a dissolution. [footnote omitted]." *Burke*, 586 S.W.2d at 308.

The Court reasons:

> "No one can seriously argue that changing a child's name from that of his natural father to that of his step-father could not weaken the emotional bond between the child and his father, or that such a change would necessarily be in the child's best interest. Further, it is recognized that a natural father has a protectable right to have his child bear his name, 57 Am.Jur.2d *Name* § 14 (1971)...." *Id.* at 309.

The Court concludes that it will not "permit an unsubstantial statutory right to apply for a name change [KRS 401.020], to take precedence over an express statement of public policy favoring preservation of family relationships [KRS 403.110(1) and (3)]." We agree with the *Burke* interpretation of the interplay between the divorce statute and the change of name statute, and we adopt it accordingly.

Nevertheless, we recognize that in *Blasi, supra,* our Court held that the Circuit Court had no jurisdiction to order a divorced mother to petition the District Court to change a child's name back to that of the child's father after a previous petition in District Court had rendered the change of the child's name a *fait accompli*. The problem in *Blasi* was procedural. Circuit Court has appellate but not supervisory jurisdiction over District Court. It has no power to do indirectly what it cannot do directly. However, the present case involves the appellate jurisdiction of the Circuit Court, not any usurpation of supervisory power. Thus, in the present case, unlike *Blasi*, the question of whether the facts presented sufficient reason for District Court to grant a change of name remained open for appellate review.

*Blasi* recognized that the "former version of KRS 401.020, under which [the *Blasi*] child's name was changed, was flawed in that it required no notice to the nonpetitioning parent." Since the statute was thereafter "amended to provide for mandatory notice and an implied right to be heard, ... [i]t is thus unnecessary for the courts to fashion a judicial remedy [because] an adequate remedy has been provided by statute." *Id.* at 81. This language suggesting an "adequate remedy" now exists because the "notice" requirement presages the present result. By recognizing this "mandatory notice and an implied right to be heard" the decision further implies a divorced father's right to have his children continue to bear his name unless such right has been forfeited by his own misconduct or other extraordinary circumstances. As stated in the Concurring Opinion in *Blasi:*

> "The name of the child is not merely nominal. It is an essential ingredient in the relationship that continues between the child and the child's father after the dissolution of marriage takes place." Leibson, J., Concurring, 648 S.W.2d at 82.

■■■ The Circuit Court has expressed this concept by using the term "clear and convincing evidence" borrowed from *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See also N.S. v. C and M.S.*, Ky., 642 S.W.2d 589 (1983). But the clear and convincing evidence stan-

dard addresses the question of termination of parental rights, rather than the much less onerous attenuation accompanying a change of name. We agree with the District Court that, as with custody matters, in dealing with a change of name the issue should be determined by a preponderance of the evidence rather than by requiring clear and convincing evidence. However, we disagree with District Court that the best interest of the child is reduced to a simple question of the child's wishes in the matter, regardless of how strongly expressed, and regardless of claims of inconvenience attaching to the use of the divorced father's name. Clearly the father has a right and a protectable interest in having his children bear his name which is not forfeited on insubstantial grounds. The best interest of the child as well as that of the father is involved in maintaining the relationship with the divorced father fostered by bearing his name, unless, of course, there are substantial reasons to the contrary, and these reasons do not include mere inconvenience and the desires of a child generating from the hostility of a custodial parent.

We borrow substantially from our reasoning in *Quisenberry v. Quisenberry*, Ky., 785 S.W.2d 485 (1990), involving a similar question, a motion for a change of child custody after the original decree. A strong argument was made in *Quisenberry* that the predominant consideration in deciding whether a change of custody would be in the best interest of the child should be the child's strongly expressed desire to live with one parent rather than the other. We refer to the fact that psychological evidence "suggests that the child is doing surprisingly well considering the hostility between the parents and their inexcusable manipulative behavior." Unfortunately, this type of post-divorce misconduct is a form of child abuse permeating the record in all too many cases, including the present one. The policy of the law is to discourage using children as weapons against a former spouse to the extent that it is possible to do so. As we stated in *Quisenberry:*

"A key factor in the emotional health of a child is the level of tension between the mother and father. A parent truly concerned with the best interest of his child will work to reduce the level of this tension, after a divorce as well as during the marriage. Litigation is counterproductive to this end, and the statutes were structured to discourage a post-judgment litigation...."

While we do not recognize the same high threshold for a change of name as the statute requires for a change of custody, we recognize that similar policy reasons exist to discourage post-divorce litigation on insubstantial grounds to the detriment of the children involved. We require a parent seeking to attenuate the relationship between her former spouse and his child to present objective and substantial evidence of just cause and significant detriment to the child before the child's name is changed where the petition for change of name is contested.

The most overpowering circumstance in this record is that a matter that should be of little or no consequence, that should have been treated by the custodial parent with supreme indifference if her concern was for the best interest of the child, has been hostilely pursued to the point that it could well cause the children emotional damage of a significant and permanent nature. A scar has been caused where there need never have been a wound. The children should have been protected from this experience rather than subjected to it. Within the bounds of the controlling statutes, we view it as our responsibility to use standards of statutory interpretation that discourage using children as weapons to abuse a former spouse rather than to use standards that will encourage such abuse.

We reverse the Court of Appeals and reinstate the judgment of the Hart Circuit Court.

STEPHENS, C.J., and COMBS, GANT, LAMBERT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the circuit court applied the erroneous standard of clear and convincing evidence. The decision of the Court of Appeals was correct and the judgment of the district court was also correct and should be reinstated.

This change of name petition has traveled a long judicial road since it was first filed in 1987. The legal problems of the parties have even a longer history. The natural mother and father were divorced in 1981 and the mother married again in 1982. Custody had been awarded to the mother and the two girls resided with the mother in Hart County where they attended school. The post-divorce proceedings involved contempt proceedings by the mother against the father for failure to pay child support and to carry hospitalization as set out in the divorce decree. The father countered by claiming the mother had not made the children available for visitation pursuant to the decree. The father also complained about the girls' using the name "Logsdon" which was that of the new husband of the mother. In 1985, the Hart Circuit Court ordered the girls' legal name to be used on their official records, but recognized that there was no way of preventing them from using whatever name they chose.

During the Christmas season of 1984, the father's mother attacked the mother of the girls at a Bowling Green shopping center and knocked her unconscious. Both girls witnessed the attack at which the paternal grandfather was also present. The circuit court observed that the incident had a great impression on the present attitude of the girls toward their father. They seemed to transfer a certain amount of their antagonism toward their grandmother to their father. The girls told the circuit court that they had been using the name Lodgsdon ever since the shopping center attack and wanted their official last names to match the one they had chosen to use.

The mother, as legal custodian of the girls, petitioned the district court to change the last names of her two daughters. Proper notice was given to the father and he retained counsel and filed an answer opposing the change. A full hearing was held and counsel for each of the parties was given an opportunity to brief the matter for the district court.

Kentucky recognizes the common law right of any person to informally change their name by public declaration. Even a child may exercise such common law right, but the child may not do so pursuant to statute because the statutory right is vested in the parent. *Burke v. Hammonds*, Ky.App., 586 S.W.2d 307 (1979). K.R.S. Chapter 401 is not intended to abrogate the common law but merely to assure that a permanent record is made of the name change. *Burke, supra.* K.R.S. 401.020 gives exclusive jurisdiction over name changes to the district court. *Blasi v. Blasi*, Ky., 648 S.W.2d 80 (1983). The statute does not provide guidance for the district court as to what standard should be used in considering such a petition. The Hart District Court employed the best interest of the children standard. The district judge considered the wishes of the children and the contrary wishes of the natural father. The mother testified that she was neutral. Ultimately, the district judge concluded that the evidence was overwhelming that the best interest of the two children would be best served by allowing them to legally change their last names. Certainly any natural father has a protectable right to have his child bear his name, but the best interest of the child is an important test in considering a request for a name change. As the district judge observed, if the best interests of the child can be used to determine custody pursuant to K.R.S. 403.270, why should the best interests of the child not be used to determine the name of the child where there is a conflict between one of the natural parents and the children.

It should be obvious that to legally require the official records of these two children use a name other than what they have chosen creates only continued confusion and ill will. It is clearly not in the best interests of the children. It is a vain hope that some legal theoreticians may honestly harbor that in some way the retention of a

last name under the circumstances of this case preserves a family relationship between daughters and father. The typical family relationship was ruptured by the adjudication in the initial divorce decree that the marital relationship was irretrievably broken. The overwhelming evidence here indicates that the children have very strong reasons not to want to continue any kind of name identity. Accordingly it is internally contradictory to posit that a wholesome father-daughter relationship can somehow arise from the ashes of this situation.

Although a natural father may have a protectable right to have his child bear his name, a change in last name does not amount to a termination of parental rights. Only the extreme measure of termination has been held to justify a more stringent standard. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *NS v. C & MS*, Ky., 642 S.W.2d 589 (1982).

In matters concerning child custody following a divorce, the best interest of the child is the paramount consideration despite the fact that the rights of the parents are necessarily involved.

The district court carefully and competently heard the matter in dispute and rendered an extensive finding of fact correctly applying the available law to the facts of this case. A reviewing court cannot substitute its findings of fact for those of the initial trier of fact. No reviewing court which does not have the benefit of live testimony or the opportunity to discern the demeanor of any of the witnesses can dip into the fact finding process.

This is a particularly fact-intensive case and the determination of facts should be left to the initial trier of fact as well as any necessary conclusion related directly thereto. This change of name occurred only after five years of separation and a serious physical attack on the mother of the children in question.

There is nothing unusual about the application of the best interest test in name changes for minors where one parent contests such a change. *See Cohan v. Cunningham*, 104 App.Div.2d 716, 480 N.Y.S.2d 656 (4th Dept.1984); *Overton v. Overton*, 207 Mont. 292, 674 P.2d 1089 (1984); *Ribeiro v. Monahan*, 524 A.2d 586 (R.I. 1987); *Daves v. Nastos*, 105 Wash.2d 24, 711 P.2d 314 (1985); *Ex parte Taylor*, 322 S.W.2d 309 (Tex.Civ.App.1959); *Azzara v. Waller*, 495 So.2d 277 (Fla.App., 1986).

Although a number of other states have chosen to enact statutory standards encompassing the "clear and convincing" standard, Kentucky has not. It is clear that the general assembly has left the application of K.R.S. 401.020 to the sound discretion of the district court. This Court should not legislate by judicial fiat. Application of the "best interest of the child" test was not reversible error.

I would affirm the decision of the Court of Appeals and reinstate the judgment of the district court.