**Michael R. EPLING, Appellant,**

**v.**

**FOUR B & C COAL COMPANY, INC.; Vicki G. Newberg, Acting Director of Special Fund; Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 92–CA–000947–WC.

Court of Appeals of Kentucky.

July 23, 1993.

Robert J. Green, Kelsey E. Friend Law Firm, Pikeville, for appellant.

A. Stuart Bennett, Jackson & Kelly, Lexington, for appellee Four B & C Coal Co., Inc.

Cathy Utley Costelle, Labor Cabinet, Louisville, for appellee Special Fund.

Before HUDDLESTON, JOHNSON and STUMBO, JJ.

STUMBO, Judge:

This appeal arises from a workers' compensation claim filed by appellant, Michael R. Epling (hereinafter "Epling"). Epling was awarded benefits based upon 50% occupational disability, which was apportioned equally between appellees, Four B & C Coal Company, Inc., and Special Fund, Vicki G. Newberg, Acting Director of Special Fund (hereinafter "Four B & C", and "Special Fund," respectively), and a rehabilitation evaluation was also ordered. Epling appealed from the decision of appellee, Administrative Law Judge, Irene Steen (hereinafter "ALJ"), to the Workers' Compensation Board (hereinafter "Board"), contending that language in the ALJ's decision or policy considerations compelled a finding of total disability, at least until rehabilitation was completed. The Board disagreed and affirmed the ALJ's decision. After reviewing the record and the law, we also must affirm.

There are no factual disputes in this case. Epling sustained a work-related back injury on April 29, 1988, for which he underwent a diskectomy in January 1989. Epling introduced medical evidence relating to the physical injury and to psychiatric problems which he alleges arose therefrom.

In a lengthy opinion, the ALJ found Epling 50% occupationally disabled as a result of the physical injury. Her findings on Epling's psychiatric problems form the basis for his first issue on appeal. Specifically, the ALJ found as follows:

> The functional impairment ratings from a psychiatric point ranged between 15% to 25% with the physicians being somewhat in disagreement concerning pre-existing conditions, they being dormant and/or active, however, upon reviewing the psychiatric testimony carefully, I find that even though the Plaintiff may at this point be *functionally* impaired from a psychiatric standpoint, the overall theme of his psychiatric problems seems to be the worrying over his financial situation since the injury and [sic] which is perfectly understandable. I feel that the psychiatric impairment is not of such a character as it [sic] will prevent him from re-entering the employment market upon obtaining suitable rehabilitation and in line with the holding in *Cook v.*

*Paducah Recapping Service*, Ky., 694 S.W.2d 684 (1985), I find that he has not suffered an *occupational* disability from a psychiatric standpoint especially considering Dr. Weitzel's testimony.

As noted, a vocational rehabilitation evaluation was ordered pursuant to KRS 342.710.

■ At issue is the ALJ's statement: "I feel that the psychiatric impairment is not of such a character as it [sic] will prevent him from re-entering the employment market upon obtaining suitable rehabilitation." Epling asserts that this is an implicit finding that his psychiatric impairment is occupationally disabling until rehabilitation is completed. Thus, he concludes that he should have been given a total award, subject to reopening by Four B & C Coal if rehabilitation is successful.

As did the Board, we disagree. Since the Board's analysis of the issue is cogent, we adopt it as follows:

Obviously, the success of Epling's argument depends upon interpretation of the phraseology utilized by the ALJ in her Opinion. That interpretation should not be made with the statement taken out of context. Rather, its meaning must be ascertained in light of the total Opinion. The ALJ found Epling to be 50% occupationally disabled, because he had significant restrictions in his physical abilities. Since his former occupation was that of a coal miner, she determined that rehabilitation was appropriate pursuant to KRS 342.710.

That statute authorizes a rehabilitation evaluation when the ALJ determines from the evidence that a claimant is unable to perform work for which he has previous training or experience. Obviously, then, the ALJ believed that Epling would be unable to return to his former coal mining occupation, and that rehabilitation was appropriate because he was young and relatively well educated. With regard to Epling's psychiatric problems, she specifically stated that while there may have been some functional impairment in that regard, there was no *occupational disability*. She then commented that Epling's psychological problems would not prevent him from working after successful rehabilitation.

We perceive the latter comment to be nothing but dicta, in further elaboration of the ALJ's belief that Epling's psychological impairment was not disabling. The implicit finding alleged by the petitioner here does not appear to be a reasonable interpretation. If the ALJ had felt that Epling's psychological problems were occupationally disabling until he received rehabilitation, she could have easily said so, and obviously would have upon Epling's petition for reconsideration. Since she overruled that petition for reconsideration, we believe the ALJ had no intention of implying even temporary disability as a result of Epling's psychological problems.

As a result, on appeal we must affirm the ALJ's finding of no occupational disability from a psychiatric standpoint. *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735, 736 (1984).

Epling's second argument is that a vocational rehabilitation award subsumes, as a matter of policy, an award of temporary total disability (hereinafter "TTD") until rehabilitation is completed. He asserts that the rehabilitation statute, KRS 342.710, recognizes that, after an injury of appreciable proportions, injured workers necessarily require medical rehabilitation in order to reach maximum medical improvement, and then are entitled to vocational rehabilitation to allow a successful return to the labor market. Epling then argues that the language of KRS 342.710(3), which governs the right to vocational rehabilitation as "reasonably necessary *to restore him to suitable employment*," establishes that rehabilitation is a necessary prerequisite to a worker regaining suitable employment (emphasis added by Epling). Thus, he states that since vocational rehabilitation is necessary for a return to suitable employment, it necessarily follows that vocational rehabilitation is an integral part of the process of reaching maximum medical improvement, for which TTD should be awarded. Finally, Epling suggests that workers will not take advantage of vocational rehabilitation if TTD is discontinued

because they will be reduced to living on the permanent-partial occupational disability awards.

 While Epling presents an intriguing assessment of the vocational rehabilitation statute, we do not find it persuasive. First, it is well settled that an award of vocational rehabilitation can be made after a permanent-partial disability award. *Edwards v. Bluegrass Containers Division of Dura Containers, Inc.*, Ky.App., 594 S.W.2d 900, 901–02 (1980). While *Edwards* did not actually address Epling's argument, since it allowed vocational rehabilitation after only a partial disability award, it follows *a fortiori* that a total award, whether permanent or temporary, is not tied in any sense to rehabilitation. If the General Assembly had a contrary intention, as Epling suggests, it has had ample opportunity to amend the statute, but has not done so. In fact, the statute, as a whole, has been amended five times without change to the sentence from the statute upon which Epling rests his argument. Therefore, we must presume that the legislature's intent is not as Epling argues. *See Inland Steel Co. v. Hall*, Ky., 245 S.W.2d 437, 438 (1952), which states the rule that the legislature is presumed to know previous constructions of a statute, and where the statute is reenacted without change, the legislature's intent is presumed to include the constructions already given to the statute. Consequently, we do not find that proper statutory construction supports Epling's argument.

Moreover, Epling's argument confuses medical rehabilitation or recovery with vocational rehabilitation. As they apply to TTD, the two types of rehabilitation are distinct. TTD has been explained to some degree in *Robinson v. Newberg*, Ky., 849 S.W.2d 532, 534 (1993). Therein, the Supreme Court, relying heavily on Larson, *The Law of Workmen's Compensation*, stated as follows:

'[T]here has evolved in America a four-way classification of disabilities, (1) temporary total, (2) temporary partial, (3) permanent partial, and (4) permanent total.' Larson, *The Law of Workmen's Compensation*, § 57.12(a). Professor Larson observes that in the usual situation, temporary total disability is payable during the period of healing and complete wage loss until a recovery or stabilization occurs. Larson, § 57.12(b). Temporary total disability benefits assist the claimant through the recovery process. *Hagy v. State Workmen's Compensation Commissioner*, 163, W.Va. 198, 255 S.E.2d 906 (1979). Obviously, death terminates any recovery process, and the necessity for those benefits. 'Of course, if the claimant's continued unemployment is the result, not of his employment-related impairment, but of personal ailments unrelated to his employment, there is no possible ground for continuing temporary benefits.' Larson, § 57.-12(e).

Larson provides further helpful explanation regarding the issue of stabilization. Specifically, he notes that the question may be purely a medical issue in that the medical evidence indicates recuperation is not yet over, since further healing or strengthening may be anticipated, and it is too early to appraise the claimant's permanent disability. Larson, § 57.12(c). On the other hand, the medical testimony may establish that the claimant is as recovered as he will ever be, and any lingering disability is permanent. *Id.* Moreover, just because some treatment is still necessary, such as drug treatment or physical therapy, does not preclude a finding that the condition is stabilized if the underlying condition causing the disability has become stable and no additional treatment will improve the condition. *Id.* However, if treatment is rendered in the hope of improving the condition, the subsequent discovery that no improvement resulted does not bar a finding that the healing period continued throughout the treatment process. *Id.* It is further noted that the persistence of pain alone, even when the pain fluctuates, does not prevent a finding that the healing period is over, provided the underlying condition is stable, and additional treatment will not be helpful. *Id.* As the Board noted, since Kentucky does not recognize the concept of temporary partial disability, any

discussion of TTD must be read in conjunction with the definition of total occupational disability set forth in *Osborne v. Johnson*, Ky., 432 S.W.2d 800, 803 (1968):

> If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the board finds that regular employment in the kind of work the man can perform is not available on the local labor market, the man will be considered to be *totally* disabled. Otherwise he will be considered to be only *partially* disabled.

To summarize, TTD is payable until the medical evidence establishes that the recovery process, including any treatment reasonably rendered in an effort to improve the claimant's condition, is over, or the underlying condition has stabilized such that the claimant is capable of returning to his job, or some other employment of which he is capable, which is available in the local labor market.

On the other hand, vocational rehabilitation is designed and intended to assist a claimant who has reached medical stability obtain job skills where he is unable to perform the work for which he had previous training or experience. *See* KRS 342.-710(3). It is *not* interrelated with medical recovery, for which TTD is allowed, except to the extent that it commences after a claimant's injury has stabilized from a medical standpoint. Consequently, we must also reject Epling's argument since it is based upon a confusion of the distinct concepts of medical and vocational rehabilitation.

In any event, as the Board succinctly noted:

> [P]artial disability necessarily implies that a worker has reached maximum medical improvement and/or is capable of some form of gainful employment activity, whether or not it is his customary job. KRS 342.710 authorizes rehabilitation upon a finding that the claimant is unable to engage in work for which he has *previous training or experience.* Thus, it can readily be seen that rehabilitation can be warranted even when the injured employee is only partially disabled.

Therefore, we conclude that Epling's argument that a TTD award is concomitant with an award of vocational rehabilitation is not persuasive.

Finally, we are not convinced by Epling's last-ditch argument that only claimants with total awards will take advantage of vocational rehabilitation. Notably, any worker who cannot return to his previous work, regardless of the amount of any compensation awarded, can benefit from vocational rehabilitation. Whether a worker chooses to make use of an offer of vocational rehabilitation is up to the worker. We also note an absence of empirical data supporting Epling's argument. As a result, we conclude that Epling's last argument must also be rejected.

For the reasons set forth above, we affirm the Board's opinion, which affirmed the ALJ's opinion and award.

All concur.