S, Appellant,

v.

S, Appellee.

Court of Appeals of Kentucky.

July 11, 1980.

Discretionary Review Denied Dec. 9, 1980.

Freeman B. Blackwell, Louisville, for appellant.

Robert Frederick Smith, Louisville, for appellee.

Before GANT, HOWERTON and VANCE, JJ.

GANT, Judge.

(At the request of the appellant and without objection by the appellee, the names of the parties are withheld from this opinion.)

The appellant and appellee, husband and wife respectively, were divorced in January, 1977, the husband not being represented by counsel and agreeing that the custody of the infant daughter, then less than one year old, be placed with his wife. In the ensuing months, the wife began a lesbian relationship with a female companion. The extent of the relationship included working at a lesbian bar, moving the female companion into the home with the child, and exchanging vows and rings with this other woman in a mock wedding ceremony at the wife's place of employment. The wife denies any overt lesbian relationship in the presence of the child and there is no proof to the contrary.

After learning of this situation, the husband filed a motion seeking change of custody, this motion being filed some ten months after the decree of dissolution. The court, on its own motion, referred the parties to a well qualified psychologist for testing. The psychologist conducted extensive tests and interviews with the husband, his present wife and the mother, but not the child. The mother employed an apparently equally qualified psychologist, who examined the child but no one else. Thus, this Court must examine the composite of the reports to arrive at a conclusion. The lower court, with considerable reluctance, denied the motion for change of custody.

The appellee would require this Court to determine whether lesbianism is, as a matter of law, sufficient to justify a change of custody. We are unwilling to assume this burden as the lower court did. Instead, we feel that the question is whether this deviate practice is sufficient, *in this case*, to warrant the change. Thus we must examine the evidence herein and determine the applicable legal standard.

■ Appellant contends that the overriding and omnipresent consideration is "the best interest of the child"; the appellee urges that the sole standard is whether there is a present showing that the environment has already affected the child. Neither is totally correct. It is obvious to this Court that the purpose of KRS 403.340(1) is to provide stability and finality to a custody decree and, in our opinion, creates an assumption that the present custodian shall continue custody for the first two years unless it is shown (1) that the environment *may* endanger the physical, mental, moral or emotional health of the child; and (2) that the stability of consistency is outweighed by the advantages attendant to change. Also, as Justice Sternberg stated in *Atwood v. Atwood*, Ky., 550 S.W.2d 465 (1976), " . . . the polar star is to determine what is for the best interest of the child."

■ The key word in KRS 403.340 is the word *"may."* We do not perceive that this word connotes that the injury to the "physical, mental, moral or emotional health" must have already occurred or be occurring at the present time. The potentiality for such danger is the test and the courts are not required to wait until the damage is done.

Applying these standards to the present case, we examine the testimony of the examining psychologists. The psychologist appointed by the court, in his report, stated as follows:

> [Homosexuality] raises serious issues in terms of the child's future.

> \*   \*   \*   \*   \*   \*

> Without question, in my opinion, there is social stigma attached to homosexuality. Therefore Shannon will have additional burdens to bear in terms of teasing, possible embarrassment and internal conflicts. Also, there is excellent scientific research on the effects of parental modeling on children. Speculating from such data, it is reasonable to suggest that Shannon may have difficulties in achieving a fulfilling heterosexual identity of her own in the future. There would seem to me to be no rational reason for purposely submitting a child to these additional and potentially debilitating influences.

Such evidence, we feel, meets the burden of proof required by the statute. *See Wilcher v. Wilcher*, Ky.App., 566 S.W.2d 173, 175 (1978). To refute this we have the testimony of the psychologist of the wife, who examined the child at age 2½. His testimony is almost entirely predicated on current conditions, with virtually no prediction on future possibilities. When questioned concerning the future, his response was "... I think the best I can say with this environment up until this time where there is no indication of abnormalities in the child." The court appointed psychologist found both parents to be reasonably well adjusted but opined that appellant's second wife was "the most stable person in this situation."

We express our appreciation for the research by the parties into this matter and particularly commend the trial judge for his independent research. This Court would call attention to an article entitled "Children of lesbians: their point of view" contained in the Journal of the National Association of Social Workers, Vol. 25, Number 3, May, 1980, p. 198, *et seq.* This article points out the fact that the lesbianism of the mother, because of the failure of the community to accept and support such a condition, forces on the child a need for secrecy and the isolation imposed by such a secret, thus separating the child from his or her peers.

We are of the opinion that the lower court erred in failing to apply the standards of "best interest of the child" and potential for endangering the physical, mental, moral or emotional health of the child and that under the evidence herein we must reverse.

All concur.