Larry Thomas
QUISENBERRY, Appellant,

v.

Gertrude Ann QUISENBERRY (Now Oexmann), Appellee.

No. 89–SC–335–DG.

Supreme Court of Kentucky.

March 15, 1990.

**486**

Tim Philpot, Lexington, for appellant.

David A. Bratt, Lexington, for appellee.

LEIBSON, Justice.

The principal issue before us is the standard to be applied by the trial court in ruling on a motion to change child custody filed more than two years after the date of the original custody decree. Otherwise stated, the question is whether the statutory requirements in KRS 403.340(2)(c) apply in this case before considering whether "modification is necessary to serve the best interest of the child." KRS 403.340(2) provides in its entirety:

"If a court of this state has jurisdiction pursuant to the uniform child custody jurisdiction act, the court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior decree unless:

(a) The custodian agrees to the modification;

(b) The child has been integrated into the family of the petitioner with consent of the custodian; or

(c) The child's present environment endangers seriously his physical, mental, moral, or emotional health, and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Modification of a custody decree within the first two years after its date is covered by the immediately preceding subsection. Section (1) of KRS 403.340 provides:

"No motion to modify a custody decree may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health."

Thus both subsections, (1) and (2)(c), utilize whether "present environment endangers seriously his physical, mental, moral, or emotional health" as a referent. Nevertheless, the appellant contends that despite this similar language "the presumption in favor of the custodial parent is only intended for the first two years," and that "after the two year period, it is clearly the best interest of the child standard that should guide the court." Appellant further contends that even if the "serious danger" standard still applies after the initial two year period, that standard has been misapplied by the trial court in the present case.

Larry and Gertrude Quisenberry were divorced on November 14, 1977. Custody of their son Tommy, then age one, was awarded to the mother. Both parties subsequently remarried, but each appears to be single at this time, with the mother having resumed her maiden name, Oexmann.

On November 17, 1986, ten years after the date of the custody decree, Larry filed a motion to modify custody. There had been extensive bickering over child support and visitation in the interim. Eventually, after a hearing and ruling against Larry's motion by a domestic relations commissioner, on January 6, 1988, Fayette Circuit Court denied modification of the custody decree. Although exceptions and other post-judgment motions were filed, there

has been no appeal as such from this initial order.

Thereafter, on April 21, 1988, Larry moved the court to reopen the motion to modify custody, and he filed further supporting affidavits from himself and son, Tommy, and an affidavit from Dr. Stuart A. Cooke, Ph.D. Dr. Cooke was originally a court appointed psychologist. His previous report was considered as part of the evidence originally deemed insufficient to support a motion to modify custody. Dr. Cooke's new affidavit attached and incorporated by reference a report to the appellant's lawyer which had been prepared following a visit on February 26, 1988 by Tommy and his father to Dr. Cooke's office. This affidavit concludes:

"The child's present environment with his mother endangers[1] his emotional health, in my professional opinion, and the harm likely to be caused by a change of environment is outweighed by its advantages to him, and therefore, the custody of this child should be transferred to the father."

■ In an order dated May 23, 1988, the trial court denied the appellant's motion to reopen custody. Further, the court orders:

"If the Respondent [appellant] again moves the Court to reopen the custody issue he shall pay $5,000 toward Petitioner's [appellee's] attorney fees previously incurred and shall pay costs and attorney fees incurred by Petitioner in response to a new motion."

We will not attempt to cover evidentiary details in this opinion. Suffice it to say that the evidence more than supports the findings of the trial commissioner and the trial court that the child's present environment does not endanger seriously the child's physical, mental, moral, or emotional health.

The initial report from the child psychologist suggests that the child is doing surprisingly well considering the hostility between the parents and their inexcusable manipulative behavior. The subsequent visit to the psychologist and report followed from an obvious effort to bolster the case. The principal reason behind the psychologist's conclusion that "Tommy is going to be far better off with his father at this point than with his mother," is that "Tommy is mature enough and intelligent enough to have some major imput [sic] into the decision as to where he should live." The trial court found no significant new evidence. The record fails to establish that the trial court's decision not to reopen the case was clearly erroneous. On the contrary, a close reading of this new report confirms that the major cause of Tommy's difficulties are "the differences between" the parents. The trial court stated "a danger to the child arises from respondent's [appellant's] efforts to change the custody of the child. The child's situation needs to be stabilized." Such conclusions were not clearly unreasonable.

■ The appellant maintains that a motion for change of custody filed more than two years after the date of the custody decree should be adjudicated solely on the basis of the best interest of the child. But the language of the over and under two years subsections are substantially the same. Both subsections pose the question whether the "child's present environment endangers seriously his physical, mental, moral, or emotional health."[2] KRS 403.-340(2)(c) adds as a further consideration whether "the harm likely to be caused by a change of environment is outweighed by its advantages to [the child]," in deference to the need for stability in the over two years situation. Subsection (2) further requires "a change ... in the circumstances of the child or his custodian." It is obvious the provisions of this subsection intend to inhibit further litigation initiated simply because the noncustodial parent, or the child, or both, believe that a change in custody would be in the child's best interest.

1. We note that neither the affidavit nor report concludes "serious" danger, the statutory term in KRS 403.340(2)(c).

2. Subsection (1) states "may endanger" rather than "endangers." Present and potential danger, if serious, are appropriate considerations in either instance, whether over or under two years after the initial custody decree.

Appellant has misinterpreted the holding in *S v. S*, Ky.App., 608 S.W.2d 64 (1980), of which we approve. *S v. S* states "the purpose of KRS 403.340(1) is to provide stability and finality to a custody decree." This does not imply the same "purpose" cannot be found in subsection (2). The differences between subsections (1) and (2) are procedural, and arise to accommodate circumstances inherent in the passage of time.

Thus subsection (1) of 403.340 specifies that "[n]o motion to modify a custody decree may be made earlier than 2 years after its date, unless the court" deems it justified "on the basis of affidavits" presented. On the other hand, subsection (2) permits such a motion and a hearing without need of a preliminary determination, but requires proof "that a change has occurred in the circumstances of the child or his custodian." Both subsection (1) and (2) require a situation that may "seriously endanger" the child and both quite obviously express the legislative intent to stabilize the child's condition and inhibit further litigation over his custody unless the child is in serious danger.[3]

 The appellant refers us to the prefatory phrase in subsection (2), "[i]f a court of this state has jurisdiction pursuant to the uniform child custody jurisdiction act . . . ," and suggests this means the subsection does not apply to cases reopened in the same court where the custody order originated. The Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), KRS 403.400–.630, is not so limited. It applies to *all* cases, regardless of whether the custody order originated with the court now asked to consider a change of custody, or originated elsewhere. By its terms a court entering an original custody decree may be required to refuse jurisdiction of a subsequent motion to change custody because of the child's present living arrangements and place of residence. Thus, the U.C.C.J.A. is a threshold consideration in every case, and the prefatory reference to it in KRS 403.-340(2) does no more than make clear that when a court is asked to entertain a change of custody case it shall not do so unless the circumstances covered by the U.C.C.J.A. are present.

 Next, appellant points to KRS 403.-350 as support for his argument. KRS 403.350 requires a "party seeking a temporary custody order or modification of a custody decree" to submit an affidavit with his motion "setting forth facts supporting the requested order or modification." It is not a substitute for KRS 403.340(2), as the appellant contends, but simply a procedural device establishing the method for bringing such a motion before the court. The existence of this procedure does not provide a vehicle to discard KRS 403.340(2)(c) and utilize the best interest rule as the sole standard for deciding a change of custody issue. Were we so disposed, we could not ignore the statutory mandate in KRS 403.-340(2)(c) to consider first whether "[t]he child's present environment endangers seriously his physical, mental, moral, or emotional health, and the harm likely to be caused by a change of environment if outweighed by its advantages to him." As the Court of Appeals stated in *Wilcher v. Wilcher*, Ky.App., 566 S.W.2d 173 (1978), the obvious purpose of both KRS 403.350 and .340 is to place the burden of proof on the parents seeking to modify custody, to encourage stability in the custodial relationship.

A key factor in the emotional health of a child is the level of tension between the mother and father. A parent truly concerned with the best interest of his child will work to reduce the level of this tension, after a divorce as well as during the marriage. Litigation is counterproductive to this end, and the statutes were structured to discourage a post-judgment litigation except where a party seeking to change custody can first cross one of the thresholds establishing KRS 403.340.

Twice recently we have rejected similar attempts to replace statutory thresholds

---

**3.** Under subsection (2) the court may also change custody if the "custodian agrees to the modification" or the "child has been integrated into the family of the petitioner with consent of the custodian."

designed to protect a parent's custodial relationship with a battle over the best interest of the child. In *Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989) and *Engle v. Jewell*, Ky. (unpublished, rendered 2/8/90), we upheld the statutory principle in KRS 405.020 that a court would not award custody to a nonparent over the rights of a parent unless it was first proved that the parent was unfit ("unsuited to the trust"), even when to do so might be in the best interest of the child. Thus, under circumstances somewhat similar to the present case, while recognizing the importance of the best interest of the child standard, we respected the statutory mandates of the General Assembly providing for other considerations which the legislature deems equally important. We are not free to disregard such further considerations, even were we so inclined.

■ It is necessary to reverse that portion of the trial court's order imposing a $5,000 penalty in the event "the respondent again moves the court to reopen the custody issue."

> Paragraph 3. of the court's order states:
> "If the Respondent again moves the Court to reopen the custody issue he shall pay $5,000 toward Petitioner's attorney fees previously incurred and shall pay costs and attorney fees incurred by Petitioner in response to a new motion."

Subsection (3) of KRS 403.340 provides:

> "Attorney fees and costs shall be assessed against a party seeking modification if the court finds that the modification action is vexatious and constitutes harassment."

Under this subsection the trial court has the power to assess attorney fees and costs at the *conclusion* of litigation which he finds "is vexatious and constitutes harassment." In this instance the trial court failed to do so. The appellee cross-appealed to the Court of Appeals on this issue, but obtained no relief, and the appellee has failed to further pursue this matter by cross-motion for discretionary review.

Therefore, the only issue before us is the validity of an order referring to potential future litigation. In the circumstances of this case, we, like the Court of Appeals, may appreciate the reasons for the trial court's order imposing a penalty for future litigation, but the court is not free to prejudge the next motion as vexatious and harassing, even if there is reason to believe such may be the case based on what has taken place thus far.

Therefore, we affirm the trial court and the Court of Appeals except as to that portion of the trial court's final order relating to attorney fees in the event of future litigation.

STEPHENS, C.J., and COMBS, GANT and VANCE, JJ., concur.

WINTERSHEIMER, J., concurs by separate opinion.

LAMBERT, J., dissents by separate opinion.

LAMBERT, Justice, dissenting.

With but a single paragraph and no authority, the majority has settled the most important issue in this case. It has proclaimed that KRS 403.340(2) applies to wholly intrastate cases. Despite the prefatory language of the statute, "If a court of this state has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act ...," the majority has decided that it "applies to *all* cases, regardless of whether the custody order originated with the court now asked to consider a change of custody, or originated elsewhere."

By its plain language the introductory phrase in KRS 403.340(2) limits its application to those cases in which the forum court has acquired jurisdiction pursuant to the U.C.C.J.A. To determine whether the U.C.C.J.A. applies, one need look no further than KRS 403.400, the first section of this uniform Act. This section, titled "Purposes; construction," begins as follows: "(1) The general purposes of KRS 403.410 to 403.620 are to:" Thereafter nine subsections are set forth which limit the applicability of the Act to cases in which another state has some connection with the parties. Finally, to make it abundantly clear that

the purposes set forth in KRS 403.400 govern the entire Act, section (2) states:

"KRS 403.410 to 403.620 shall be construed to promote the general purposes stated in this section."

In 96 ALR3d 968 (1980), an annotation entitled *Validity, Construction, and Application of Uniform Child Custody Jurisdiction Act*, collects numerous cases interpreting the Act. In Section 3, a number of decisions from throughout the United States are annotated and demonstrate that the purpose of the Act is to define child custody jurisdiction when two or more states have a connection with the child. A number of courts have flatly stated that the U.C.C.J.A. does not apply to intrastate custody disputes. In *Nelson v. Nelson*, 433 So.2d 1015 (Fla.App. 3 Dist.1983), this proposition is stated as follows:

"Insofar as *intrastate* custody disputes are concerned, the Uniform Child Custody Jurisdiction Act does not apply, *Adams v. Adams*, 374 So.2d 29 (Fla.3d DCA 1979), and the court which entered the custody decree continues to have exclusive jurisdiction to modify the decree."

In *In Re Marriage of Trouth*, 631 P.2d 1183 (Colo.App.1981), the Colorado Court of Appeals said:

"This provision of the Uniform Child Custody Jurisdiction Act, together with its stated purposes, indicate that the Act does not apply to actions which are purely intrastate. The purposes of the Act are to promote cooperation between courts of different states which will lead to an informed decision on custody, Section 14–13–102, C.R.S.1973, and to 'prevent the desperate shifting from state to state of thousands of innocent children by interested parties seeking to gain custody rights in one state even though denied those rights by the decree of another state.' *Fry v. Ball*, 190 Colo. 128, 544 P.2d 402 (1975). Thus, Section 14–13–111 is not applicable here since the child, his parents, and his grandparents resided in Colorado, and the divorce and the custody decree were entered by a Colorado court." *Id.* at 1185.

Finally, in *Amos v. Amos*, 282 Ark. 532, 669 S.W.2d 200 (1984), the Arkansas Supreme Court said

"The chancellor found that the statute [the Arkansas codification of KRS 403.-420] is solely for custody battles between residents of different states. We agree." *Id.* 669 S.W.2d at 201.

To make matters worse, the majority has even disregarded Kentucky precedent on this issue. In *Shumaker v. Paxton*, Ky., 613 S.W.2d 130 (1981), this Court recognized the purposes of the U.C.C.J.A. as follows:

"While we feel that the above statute is aimed primarily at interstate rather than intra-state applications we do view it as affording some direction and guidance for the proper forum in which to maintain an action such as we have here." *Id.* at 132.

In *Shumaker* the Court candidly acknowledged the nonapplicability of the U.C.C.J.A. to intrastate cases but borrowed from it for the purpose of determining venue. The majority in the case at bar demonstrates no such candor. It flatly holds that the U.C.C.J.A. applies to every child custody case.

In clear disregard of the foregoing authority and the prevailing rule of law throughout the United States, the majority has held, "Thus, the U.C.C.J.A. is a threshold consideration in every case...." This conclusion is accurate only to the extent that the forum court must first determine whether the order sought to be modified was rendered in another state. Wholly intrastate cases are not governed by the U.C.C.J.A. and by its own terms KRS 403.340(2) does not apply to intrastate custody modification actions.

Perhaps the majority believes that if KRS 403.340(2) does not apply to intrastate cases, there may be a void in the law or an absence of standards by which a trial court should measure the evidence on a motion to modify custody. Such a situation, however, is hardly unique in the law of Kentucky. In many areas the Legislature has failed to enact statutes where we think such would be desirable. It is not our prerogative, however, to use a "law

wrench" to make a statute apply when by its very terms it does not apply. We should be guided by well known rules of statutory construction such as are found in *Gateway Construction Company v. Wallbaum*, Ky., 356 S.W.2d 247 (1962), as follows:

"The best way in most cases to ascertain such intent or to determine the meaning of a statute is to look to the language used, but no intention must be read into the statute not justified by the language. The primary rule is to ascertain the intention from the words employed in enacting the statute and not to guess what the Legislature may have intended but did not express. Resort must be had first to the words, which are decisive if they are clear. The words of the statute are to be given their usual, ordinary, and everyday meaning." (Citations omitted.) *Id.* at 249.

The majority's misinterpretation of KRS 403.340(2) has created a nearly impenetrable barrier for noncustodial parents when a change of custody is sought. Regardless of the number of years which have passed since entry of the original decree, the changes in the circumstances of the parties, the age of the child, and the wishes of the child (a significant factor in the case at bar), trial courts will be required to retain the original custodian unless the movant is able to demonstrate that the child's present environment "endangers seriously his physical, mental, moral or emotional health," a standard which is nearly impossible to achieve in ordinary circumstances.

I am of the opinion that trial courts should not be hamstrung to such a degree, but should retain a measure of discretion to determine custody modification upon a showing of changed circumstances. By judicious use of the power to impose court costs and attorneys' fees, trial judges would be able to prevent vexatious custody modification litigation.

WINTERSHEIMER, Justice, concurring.

I concur with the result achieved by the majority opinion but I wish to state my reasons separately.

The Court of Appeals should be affirmed because the trial court adopted the proper standard in determining that the husband had failed to meet his burden of proof. His evidence was unconvincing that there was a present danger sufficient to require a change in custody. A reviewing court cannot substitute its view for those of the trial court in the absence of clear error or an abuse of discretion. Neither factor is present here. *Reichle v. Reichle*, Ky., 719 S.W.2d 442 (1986).

The concept of best interest of the child is fundamental in any consideration of custody. There is no conflict in the application of KRS 403.340 and the best interest of the child philosophy. Here it is abundantly clear that it would be in the best interest of the child for the parents to reduce the tensions in the child's life.