**Terry GOFF Appellant,**

v.

**Laura Andrews GOFF Appellee.**

No. 2003–SC–000477–DG.

Supreme Court of Kentucky.

Sept. 22, 2005.

Wesley V. Milliken, Milliken Law Firm, Bowling Green, KY, Counsel for Appellant.

Laura Andrews Goff, Franklin, TN, Counsel for Appellee.

OPinion of the Court by Justice LAMBERT.

Where applicable, the Uniform Child Custody Jurisdiction Act[1] (UCCJA) and the Parental Kidnapping Prevention Act[2] (PKPA) allow Kentucky courts to exercise jurisdiction over child custody cases or jurisdiction to enforce foreign custody judgments where no other state has asserted jurisdiction or another state has declined to exercise jurisdiction.

Terry Goff and Laura Goff were married in Wilson County, Tennessee on June 17, 1996. At that time, they purchased a home in Nashville, Tennessee. Less than one month after the marriage, July 10, 1996, Mr. Goff filed a petition for annulment of the marriage in the Warren [Kentucky] Circuit Court.[3] Ms. Goff continued living in the marital home in Nashville, and Mr. Goff resided in Warren County, Kentucky.

On October 3, 1996, Ms. Goff filed for divorce and other relief in Davidson County, Tennessee. On October 13, 1996, Ms. Goff gave birth in Nashville, Tennessee. On October 15, 1996, Mr. Goff filed an amended petition in Kentucky seeking dissolution of the marriage. On December 6, 1996, the Warren Circuit Court entered an order striking Ms. Goff's motion to dismiss her request to stay the divorce proceeding on the grounds that she intentionally did not appear for the hearing.

---

1. KRS 403.420(1).

2. 28 U.S.C. § 1738A(c)(2)(d).

3. Mr. Goff was a resident of the Commonwealth at all relevant times.

On January 17, 1997, the Davidson County, Tennessee court dismissed Ms. Goff's claim for child support *pendente lite* and her other claims against Mr. Goff on the basis that there was a pending dissolution action in Kentucky.[4] At that time the child had been living exclusively in Tennessee since her birth, approximately three months.

On January 29, 1997, Mr. Goff filed a motion in the Warren Circuit Court to set child support, wherein he acknowledged that Ms. Goff was the "fit and proper custodian" of the minor child. In his motion, Mr. Goff stated that Kentucky had jurisdiction to set his child support obligation under *Gaines v. Gaines*.[5] On February 18, 1997, the parties reached a settlement in the Kentucky dissolution action. An agreed decree of dissolution of marriage ("Agreement") was prepared by the parties, signed by the court, and entered on March 3, 1997. In the Agreement, Ms. Goff consented to the "jurisdiction of this Court for the purpose of resolving her marriage to the Petitioner and resolving all issues arising out of that marriage." The Agreement contained recitals granting custody of the child to Ms. Goff with a provision allowing Mr. Goff reasonable visitation "at times and places to be agreed upon by the parties." In addition to custody, it was agreed that Mr. Goff would pay child support.

The parties, however, returned to court on a number of occasions to litigate various disputes regarding child support and visitation. In April 1999, Ms. Goff filed a motion seeking past-due child support and seeking to increase child support. By order entered on June 4, 1999, the court denied the motion to increase child support, but ordered Mr. Goff to pay an arrearage of $2,800.00. In April of 2000, a dispute arose between the parties regarding visitation. On May 12, 2000, the trial court resolved the matter by entering a formal visitation order and schedule. In response to further disputes over visitation, the trial court entered a supplemental order on June 14, 2000.

Additional motions were filed disputing visitation from May through October of 2000. In August of 2000, Mr. Goff filed a motion seeking joint custody of the child. He subsequently asked the court to order a joint custody evaluation. On October 30, 2000, Ms. Goff filed a motion to terminate Mr. Goff's visitation with the child, alleging that his behavior had subjected the child to emotional trauma. She also filed a motion to hold Mr. Goff in contempt after he failed to return the child from visitation as scheduled.

On November 29, 2000, Ms. Goff filed a petition to register a foreign decree in Williamson County, Tennessee, asserting that Tennessee had jurisdiction over custody matters. On April 2, 2001, a trial was held in the court of Williamson County, Tennessee. During this trial, the Kentucky custody decree was registered as a foreign decree, and the Tennessee court granted modification of the original custody decree.

On September 6, 2001, the Warren County Family Court issued an order nullifying the original custody decision. The order denied Mr. Goff's request for modification of custody and found that the original custody determination was void. The family court reasoned that (1) Kentucky

---

**4.** This case began in Warren Circuit Court, Division II, and was transferred to Division I, and then again transferred to Division III after the Family Court was established. Prior to the establishment of Family Court, Domestic Relations Commissioners routinely handled cases of this type.

**5.** 566 S.W.2d 814 (Ky.1978).

was not the child's home state six months before or after the commencement of the divorce proceedings; (2) the child did not have significant contacts with Kentucky nor was there substantial evidence concerning the child's present or future care, protection, training and personal relationships; (3) the child is not present in this state due to abandonment, and no emergency situation exists; and (4) Tennessee appears to have jurisdiction over the matter and is actively asserting jurisdiction. In sum, the court held that Kentucky lacked original jurisdiction over the custody matter and that Kentucky would defer to Tennessee to enter a custody order.

On May 30, 2003, the Kentucky Court of Appeals reversed in part the decision of the Warren Family Court as to lack of jurisdiction of the original 1997 dissolution action whereby the Warren Circuit Court took jurisdiction. However, the Court of Appeals affirmed in part, holding that since the child resided outside of Kentucky for more than six months, Kentucky no longer had continuing jurisdiction to modify custody. Although the Court of Appeals noted this was clearly not the child's home state, it found original jurisdiction under the provisions of 28 U.S.C. § 1738A(c)(2)(d) of the PKPA and subsection (d) of KRS 403.420(1) of the UCCJA because no other state asserted jurisdiction or had declined jurisdiction. The Court of Appeals characterized the controlling question as "whether a Tennessee court was asserting jurisdiction when the original decree was entered in 1997." The Court of Appeals concluded that the Davidson County, Tennessee, court declined to exercise jurisdiction over the custody matter in 1997 by dismissing Ms. Goff's dissolution action in favor of the Kentucky action. Thus, the basis of the Court of Appeal's holding was that another

state court (Tennessee) had declined jurisdiction when it dismissed a pending child support claim in favor of the Kentucky action.

This Court granted discretionary review to decide the following two issues concerning the UCCJA and PKPA: (1) whether there was original jurisdiction in the Warren Circuit Court to enter a custody order in the Decree of Dissolution of Marriage, as agreed upon by the parties, and (2) whether that court has continuing jurisdiction to modify the custody order.

■ Ms. Goff argues that the Kentucky trial court's subsequent dismissal of the child custody action for lack of jurisdiction was proper. She claims that she and the child had never resided in Kentucky and were residents of Tennessee at all times. She claims that the UCCJA did not confer jurisdiction because Kentucky had no significant connection with the child. In response to KRS 403.420(1)(d) jurisdiction, she argues that Tennessee did not decline jurisdiction in the matter and is now asserting jurisdiction over the child custody matter, which she says is support for the decision of the Kentucky trial court to acknowledge that it had no jurisdiction. Our review reveals that the Tennessee court denied Ms. Goff's motion for child support *pendente lite* on grounds that a prior suit was pending, and dismissed her entire claim based on the pending Kentucky action. The Court made no specific mention of child custody in the order dismissing.

At the time this dispute began, the UCJA governed all issues surrounding jurisdiction over child custody matters.[6] During the 2004 regular session of the General Assembly, however, the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), KRS 403.800–880, replaced

6. KRS 403.400 through 403.620 as adopted in 1980.

the UCCJA to bring Kentucky law in line with the federal Parental Kidnapping Prevention Act.[7] However, the now superseded UCCJA governs this matter as it was the law at the inception of this litigation.[8]

A fundamental purpose of the UCCJA is to govern child custody proceedings. It specifically states that its purpose is to avoid jurisdictional competition and conflict with other states in child custody matters.[9] The UCCJA is a threshold consideration and it is clear that a change in custody shall not be entertained unless the circumstances covered by the UCCJA are present.[10] The requirements for jurisdiction under the UCCJA are as follows:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

**7.** *See* Graham & Keller, *Domestic Relations Law*, 15 Kentucky Practice § 14.23 (2d ed. 2005) ("The new act will make significant changes in initial custody jurisdiction because it will eliminate the possibility that a mere 'best interest' and 'significant connection' determination can serve as the basis for an enforceable custody order. This change will also conform Kentucky law to federal law, the Parental Kidnapping Prevention Act, known as the PKPA. The act will also answer questions about the troubling problem of continuing jurisdiction when a Kentucky court makes a custody determination but the child later gains and new home state elsewhere.").

**8.** KRS 403.400(1) provides:

The general purposes of [the UCCJA] are to:
(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child;
(c) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have

the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;
(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;
(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;
(g) Facilitate the enforcement of custody decrees of other states;
(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and
(i) Make uniform the laws of those states which enact it.

**9.** KRS 403.400(1)

**10.** *Quisenberry v. Quisenberry*, 785 S.W.2d 485, 486 (Ky.1990).

(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.[11]

The PKPA[12], adopted in 1980, "imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act."[13] Therefore, a state wishing to have its original custody decree enforced in another state must comply with the provisions of the PKPA. For a state to ensure enforceability of its decrees in sister states, at least one of the requirements below must be satisfied:

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.[14]

Included within PKPA subsection (g) is the mandate that a Kentucky court com-

---

11. KRS 403.420(1).

12. 28 U.S.C. § 1738A (2000).

13. *Thompson v. Thompson*, 484 U.S. 174, 175–76, 108 S.Ct. 513, 514–15, 98 L.Ed.2d 512, 517 (1988) (noting that the United States Congress has the authority under the Full Faith and Credit Clause to apply federal enforceability standards for custody decrees between states).

14. 28 U.S.C. § 1738A (2000).

municate with the court of another state to determine if custody is at issue.[15]

■ As subject matter jurisdiction cannot be conferred by waiver or consent,[16] claims as to a lack of subject matter jurisdiction may be raised at anytime and reviewed when raised by any party.[17] It is indisputable that at the time of the child's birth neither Kentucky nor Tennessee had home state jurisdiction, and no party makes such a claim. At the time of the filing of the petition for dissolution in Tennessee the child was less than six months old, and had never lived outside of Tennessee. It is generally accepted that physical presence of the child, while desirable, is not an absolute prerequisite for jurisdiction to determine custody in Kentucky.[18] Nevertheless, the fact the child may have some family in Kentucky, including his or her father, does not overcome the fact of more important evidence concerning the child's care, protection, training, and personal relationships in another state.[19] Likewise, there is no indication that emergency jurisdiction existed in Kentucky under KRS 403.420(1)(c).[20] KRS 403.420(1)(d), commonly known as "default" jurisdiction, occurs in instances where no other jurisdictional grounds under the UCCJA apply.[21] Under this provision, there must be a finding that another state has declined jurisdiction on the grounds that the forum state is the more appropriate forum, and that it is in the best interests of the child to assume jurisdiction.

Kentucky law provides some guidance on the application of default jurisdiction

**15.** *Id.* § 1738A(g) provides as follows: "A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." See KRS 403.450(3). *See, e.g., Karahalios v. Karahalios,* 848 S.W.2d 457 (Ky.App.1993).

**16.** CR 12.08. *Commonwealth, Dept. of Highways v. Berryman,* 363 S.W.2d 525, 526 (Ky. 1962); *Rodney v. Adams,* 268 S.W.2d 940 (Ky.1954); *Gullett v. Gullett,* 992 S.W.2d 866, 869 (Ky.App.1999) (noting that questions of jurisdiction may be raised for the first time on appeal).

**17.** *Duncan v. O'Nan,* 451 S.W.2d 626, 631 (Ky.1970) (noting that "subject matter jurisdiction cannot be born of waiver, consent or estoppel has to do with those cases only where the court has not been given any power to the do anything at all in such a case, as where a tribunal vested with civil competence attempts to convict a citizen of a crime. In other words, 'subject matter' does not mean 'this case' but 'this kind of case'...."). *Gullett,* 992 S.W.2d at 870.

**18.** KRS 403.420(3). *See* Graham & Keller, *Domestic Relations Law,* 15 Kentucky Practice § 14.28 (2d ed.1997) for a discussion of significant connection jurisdiction under the UCCJA.

**19.** *Turley v. Griffin,* 508 S.W.2d 764, 766 (Ky. 1974) (adopting that Kentucky must have "maximum contacts" to exercise continuing jurisdiction); *Wood v. Graham,* 633 S.W.2d 404 (Ky.1982) (holding that where a child had never lived outside of Ohio, was brought by the father to Kentucky prior to a filing for dissolution of marriage, and there was no evidence in the record to show that it would be in the best interests of the child for Kentucky to assume jurisdiction, that it was in the best interests of the child for Ohio to have custody jurisdiction because all evidence as to those who cared, provided for, and supervised the child was in that state).

**20.** *See Cabinet for Human Resources v. McKeehan,* 672 S.W.2d 934 (Ky.App.1984).

**21.** David Carl Minneman, Annotation, *Default Jurisdiction of the Court under Sec. 3(A)(4) of the Uniform Child Custody Jurisdiction Act (UCCJA) or The Parental Kidnapping and Prevention Act (PKPA),* 28 U.S.C.A. Sec. 1738A(C)(2)(D), 6 A.L.R.5th 69 (1992).

provision, but the cases provide little rationale for its application.

In *Moore v. Asente*, we held that in addition to jurisdiction under KRS 403.420(1)(a), the Kenton Circuit Court had jurisdiction under KRS 403.420(1)(d) to enter its judgments and orders in a child custody dispute stemming from the breakdown of a proposed private adoption between residents of Ohio and Kentucky.[22] The residents of Kentucky proposed to place a child for adoption and after some hesitation committed to the process by placing the child with an Ohio family. We held that the Kenton Circuit Court properly determined that it had jurisdiction. While Kentucky was not the child's home state when the action was commenced, Kentucky had been the child's home state within six months before commencement of the proceeding. We noted that at the time the action commenced, Ohio could have qualified as the child's home state. "Ohio had previously yielded to Kentucky, declined to exercise jurisdiction, and recognized that Kentucky 'is the proper forum in which to assert jurisdiction over this matter.' "[23]

*Gullett v. Gullett* presents somewhat similar facts to the present case in that the child involved in the custody dispute was born in an adjacent state a few weeks after the filing of the divorce.[24] The Court of Appeals affirmed a trial court ruling that it had jurisdiction to consider the post-dissolution child support and visitation proceedings.[25] Initially, the husband brought post-dissolution child custody and visitation actions two weeks prior to the birth of the child and after the mother moved out of Kentucky. The Court of Appeals held that KRS 403.420(1)(d) applied because no other state had jurisdiction in accordance with subsections (a)-(c) and it was in the best interest of the child for the state to assume jurisdiction. When the child was born, Ohio attained concurrent jurisdiction with Kentucky to decide custody matters concerning the child; however, the fact that Ohio later became the child's home state did not divest Kentucky of original jurisdiction under KRS 403.420(1)(d). "The mere fact that the child and his custodial parent live in another state does not, as a matter of law, divest the trial court of jurisdiction."[26] The Court of Appeals held that at the time of the dissolution the mother failed to show that jurisdiction was not proper under KRS 403.420(1)(d). This was based on her failure to show in the record that she and the child were residents of Ohio. The court based its decision on the Ohio equivalent of the UCCJA and stated that Ohio shall not exercise jurisdiction if at the time of the filing of the petition "a proceeding concerning the custody of the child was pending in the court of another state exercising jurisdiction substantially in conformity with [the UCCJA]."[27]

In *Karahalios v. Karahalios*, the Court of Appeals held that under the provision of the PKPA, 28 U.S.C. § 1738A(g), a second

**22.** *Moore v. Asente*, 110 S.W.3d 336, 349–50 (Ky.2003).

**23.** *Id.* at 350 (*quoting In re Adoption of Asente*, 90 Ohio St.3d 91, 734 N.E.2d 1224, 1235 (2000)).

**24.** 992 S.W.2d 866, 870 (Ky.App.1999)

**25.** *Id.* ("However, because the child was unborn at the time of the petition, again, there is an anomaly in the application of KRS 403.420(b) in that the unborn child, having no life experiences, had not yet had the opportunity to form 'significant connections' with a state, be it Kentucky or Ohio.").

**26.** *Id.citing Dillard v. Dillard*, 859 S.W.2d 134, 137 (Ky.App.1993).

**27.** *Id.*

state may not initiate a child custody case when custody is pending in another state.[28] The Court of Appeals held that the failure of the Kentucky court to communicate with Tennessee divested it of custody jurisdiction because the Kentucky court did not determine whether the Tennessee court considered the custody matter to be pending.[29]

As the foregoing precedents provide little guidance on the precise application of the default provision, we look to its application in foreign jurisdictions. There are several reasons a court may decline jurisdiction of custody matters and allow another court to assume jurisdiction. Among these reasons are a foreign court's determination that another state is a more appropriate forum,[30] that none of the jurisdictional rules of the UCCJA apply, and that bifurcation of the divorce and custody proceedings would be wasteful and dilatory.[31] It is even possible for a Kentucky court to exercise jurisdiction where the forum court concludes that another state would have declined to exercise jurisdiction if the custody action had been brought

in that state.[32] This is not an exhaustive list of all possibilities for declining jurisdiction, but is illustrative of the need for courts to give a practical and credible basis for denying jurisdiction that is consistent with the purposes of the UCCJA and PKPA.[33] Moreover, courts must clearly communicate by virtue of KRS 403.450(3).

In this case, Tennessee declined to hear a motion offered by Ms. Goff to establish child support payments. It also dismissed her divorce case.[34] In its order dismissing, the Tennessee court impliedly declined jurisdiction to determine child custody. Upon dismissal, there was no longer a vehicle by which the Tennessee Court could adjudicate any issues between the parties. In the "agreed" decree of dissolution of marriage of March 3, 1997, the Kentucky court determined that Ms. Goff "is a fit and proper person to have the care and custody and control of the parties' infant child." The refusal of the Tennessee court to hear the child support motion and dismissal of the case amounts to clear communication from the Tennessee court that it was refusing to exercise jurisdiction

---

28. 848 S.W.2d 457, 461 (Ky.App.1993).

29. *Id.* (noting that "the fact remains that the failure of the circuit court to communicate with the Tennessee court has resulted in a predicament that the UCCJA was enacted to prevent, namely, jurisdictional competition and lack of cooperation with a court of another state.").

30. *Matter of Guardianship of Mayes,* 523 N.E.2d 249 (Ind.App.1988).

31. *Redding v. Redding,* 398 Mass. 102, 495 N.E.2d 297 (1986).

32. *See Marriage of Hubbard,* 315 N.W.2d 75, 81 (Iowa 1982) (holding that jurisdiction is proper since the other state would have declined jurisdiction under the UCCJA if a custody action had brought there).

33. *See supra* note 7.

34. The Order states as follows: "This matter was before the Court on December 13, 1996 on Motion of Mrs. Goff for child support *pendente lite,* and Motion of Mr. Goff to dismiss, statements of counsel and the entire record, from all of which the Court found that Mr. Goff's Motion to Dismiss should be granted and Mrs. Goff's Motion should be denied. Accordingly, it is therefore ORDERED, ADJUDGED and DECREED that the Motion of Laura K. Andrews Goff for child support *pendente lite* shall be, and is hereby, denied. It is further ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed on behalf of Terry W. Goff shall be, and is hereby, dismissed on the grounds of prior suit pending. It is finally ORDERED, ADJUDGED AND DECREED that the costs of this cause shall be, and are hereby, taxed against the Plaintiff, Laura K. Andrews Goff, for which execution may issue if necessary. Enter this the 13th day of January, 1997."

over the child custody matter. In light of the requirement that courts communicate a clear intent or reason for declining jurisdiction, the record is sufficient. Therefore, the Tennessee court effectively declined jurisdiction, thereby authorizing Kentucky to assert jurisdiction pursuant to KRS 403.420(1)(d). Therefore, the decision of the Court of Appeals on this issue is affirmed.

■ The second issue is whether Kentucky has continuing jurisdiction to modify a custody order. At the time a party seeks modification, KRS 403.420(1)(a)-(d) must apply as the jurisdictional requirements of the UCCJA apply to all cases regardless of whether the custody order originated in Kentucky or another state or foreign court.[35] That threshold determination required by the UCCJA to establish Kentucky jurisdiction is likewise required to modify an order even of its own making. Mr. Goff's request for change in custody can only be considered when the circumstances covered by the UCCJA are present.[36] In *Reeves v. Reeves*, the Court of Appeals stated that the continuing jurisdiction was a function of "whether the child has a 'significant connection'" to Kentucky.[37] The Court then delineated that continuing jurisdiction would be proper if Kentucky were the child's home state within the last six months.[38] Another Court of Appeals case, *Turley v. Griffin*, explained that continuing jurisdiction is inappropriate because the child resided outside of Kentucky for more than six months thereby losing home state status.[39] As the

*Reeves* court held, relying on *Turley*, the "state which has the 'most significant connection' to the child needs to be the one to assert jurisdiction over matters affecting custody and visitation."[40] The record indicates that the child was born in Tennessee and that Tennessee is the child's home state. Therefore, Kentucky does not have continuing jurisdiction to modify custody. At the time modification was sought, Tennessee was unquestionably the home state of the child and Kentucky courts were without custody modification jurisdiction.

Accordingly, we affirm the Court of Appeals.

COOPER, GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

---

35. *Quisenberry v. Quisenberry,* 785 S.W.2d 485 (Ky.1990).

36. *Id.*

37. 41 S.W.3d 866, 867 (Ky.App.2001).

38. *Id.*

39. 508 S.W.2d 764 (Ky.App.1974).

40. *Reeves,* 41 S.W.3d at 867 (holding that lack of continuing jurisdiction where both minor children appear to have resided outside of Kentucky for longer than six months, and additionally, it appears that neither party resided in the state at the time the motion was made).